## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

CHANGE LENDING, LLC,

      Plaintiff,

v.                                                             Civ. No. 24-544 GBW/JHR

VIVIANA MONTOYA, *et al.,*

      Defendants.

### ORDER GRANTING IN PART AND DENYING IN PART INDIVIDUAL DEFENDANTS' MOTION TO COMPEL ARBITRATION

      THIS MATTER comes before the Court on The Individual Defendants' Motion to Compel Arbitration (*doc. 23*).  Having reviewed the briefing (*docs. 23, 31, 33, 39*) and held a hearing (*doc. 40*), the Court will GRANT the Motion in part and DENY the Motion in part.

### I.    Parties' Contentions

      In short, the Individual Defendants contend that they and Plaintiff signed an Arbitration Agreement which dictates that Plaintiff's claims against them must be arbitrated rather than litigated in this Court.  Plaintiff contends that certain Defendants have failed to prove the existence of an Arbitration Agreement applicable to them.  For the Defendants who are signatories to an Arbitration Agreement, Plaintiff argues that the language of other contemporaneously-signed contracts demonstrate the lack of mutual assent to an agreement to arbitrate.  Finally, to the extent that an agreement to

arbitrate came into effect with the signing of the Arbitration Agreement, Plaintiff claims that later contracts superseded any agreement to arbitrate.

## II.    The Arbitration Agreement

The parties agree that Defendants Vivian Montoya, Justin LeDoux, Heather Lynn Lough, Alam Singh, Mark Louis Brady, Nickolas Jason Mendoza, and Patsy Garcia signed the Arbitration Agreement along with Plaintiff's representative. *Doc. 41*. They further agree that the material terms for each of their Agreements is identical. *Id*. The Arbitration Agreement states in part:

> By signing this Agreement, you and the Company both agree to arbitrate all disputes that are related in any way to your employment as described below. This Mutual Agreement to Arbitrate Disputes/Claims provides that both you and the Company agree that you will forego any right you may have to a jury trial on claims relating to your employment.

*Doc. 23-1* at 1. It further provides:

> Except for the claims expressly excluded by this Agreement, both you and the Company agree to arbitrate any and all disputes, claims or controversies ("Claims") that the Company may have against you or that you may have against the Company which could be brought in a court arising out of your employment relationship with the Company, including, but not limited to, all Claims arising out of, or relating to, your employment status with the Company and the end of your employment with the Company. This Agreement includes, but is not limited to, […] any alleged or actual agreement, contract or covenant (oral, written or implied) between you and the Company; any Company policy […] or Claim based on any public policy, contract, tort, or common law or any Claim for costs, fees, or other expenses or relief, including personal, emotional, physical, or economic injuries, or attorney's fees (collectively, 'Claims'). This agreement also applies to all Claims the Company may have against you.

*Id.* Plaintiff concedes that the claims in its lawsuit would fall within the scope of this Arbitration Agreement. *See doc. 40* at 4.

## III.    Other Relevant Contractual Provisions

The Defendants who signed the Arbitration Agreements also signed other contracts which include language relevant to the instant Motion. First, each of the signatories of the Arbitration Agreement also signed an "Offer Letter." The Offer Letter contained the "Interpretation, Amendment, and Enforcement" Clause. *See doc. 31-2* at 2; *see also doc. 41* ¶ 3. This Clause reads in full:

> This letter agreement constitutes the complete agreement between you and the Company, contains all of the terms of your employment with the Company and supersede any prior agreements, representations or understandings (whether written, oral or implied) between you and the Company. This letter agreement may not be amended or modified, except by an express written agreement signed by both you and a duly authorized officer of the Company. The terms of this letter agreement and the resolution of any disputes as to the meaning, effect, performance or validity of this letter agreement or arising out of, related to, or in any way connected with, this letter agreement, your employment with the Company or any other relationship between you and the Company (the "Disputes") will be governed by California law, excluding laws relating to conflicts or choice of law. You and the Company submit to the exclusive personal jurisdiction of the federal and state courts located in [Contra Costa] or [Orange] County, CA in connection with any Dispute or any claim related to any Dispute.

*Id.*

Second, several of the signatories of the Arbitration Agreement also signed an "Employment Agreement." Plaintiff highlights several clauses in the Employment

Agreements that it contends are relevant to the instant motion.  The first of these

Clauses is Clause 4.6, "Irreparable Harm and Injunctive Relief," which provides that:

> in the event of any breach of any provision of this Article, irreparable harm
> will be suffered by Company and that any remedy available at law will be
> inadequate and Company and Employee do, therefore, agree that in such
> event Company shall be entitled to injunctive relief in any court of
> competent jurisdiction against Employee and against any other person or
> entity involved in or connected with such breach […] which rights shall be
> in addition to such rights as Company may have for damages and in
> addition to such other remedies as the law or equity may provide.

*Doc. 31-3* at 2 (emphasis added).  These Employment Agreements also have choice of

law clauses designating California as their governing law, *e.g., id.* at 3, clauses

stipulating that authorship of the Agreement favors neither party, *e.g., id.* at 4, as well as

integration clauses (called "Entire Agreement" Clauses).  *Id.*  The "Entire Agreement"

clauses state:

> This Agreement sets forth all the promises, covenants, agreements and
> conditions between the Parties with respect to the subject matter hereof and
> supersedes all prior and contemporaneous agreements and
> understandings, inducements or conditions, expressed or implied, oral,
> written or otherwise, except as set forth herein.

*Id.*

Lastly, two of the Arbitration Agreement signatories (Defendants Singh and

Lough) signed Confidentiality and Non-Disclosure Agreements (hereinafter "Non-

Disclosure Agreement").  *Doc. 31* at 12.  These Agreements provide:

> That the unauthorized use or disclosure of any Confidential Information by
> Employee shall cause irreparable harm to Company, an injury for which
> there is no adequate remedy at law, and that Company may move for any

and all appropriate equitable relief including preliminary and permanent injunctions in any court of competent jurisdiction to prevent unauthorized use or disclosure of Confidential Information. Employee agrees that any such injunctive relief is in addition to all other available remedies, and does not preclude Company from seeking other available remedies.

*Docs. 31-6* at 2, *31-7* at 2. The Non-Disclosure Agreements include choice of law and integration provisions which state:

[the Non-Disclosure Agreement] constitutes the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior or contemporaneous oral or written agreements concerning Confidential Information. This Agreement shall be governed by and construed under the laws of the State of California without regard to its conflict of laws principles.

*Docs. 31-6* at 2, *31-7* at 2.

## IV.    Applicable Law

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et. seq., governs the enforcement of arbitration agreements involving commerce. *See Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 232 (2013). Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects "the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

The FAA permits a party to move the Court to compel arbitration of issues covered by a valid arbitration agreement. *See* 9 U.S.C. § 4. Substantively, the movant must show that (i) the parties formed an agreement to arbitrate; and (ii) their dispute

falls within that agreement's scope. *Soc'y of Pro. Eng'g Emps. in Aerospace v. Spirit AeroSystems, Inc.*, 681 F. App'x 717, 721 (10th Cir. 2017) (citing *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 299 (2010)). Formation "must always be decided by a court." *Fedor v. United Healthcare, Inc.*, 976 F.3d 1100, 1105 (10th Cir. 2020). Procedurally, a motion to compel arbitration resembles a motion for summary judgment:

> the party moving to compel arbitration bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement and the opposing party's failure, neglect, or refusal to arbitrate; if it does so, the burden shifts to the nonmoving party to raise a genuine dispute of material fact regarding the existence of an agreement or the failure to comply therewith.

*BOSC, Inc. v. Bd. of Cnty. Comm'rs of Bernalillo*, 853 F.3d 1165, 1177 (10th Cir. 2017). "The existence of an agreement to arbitrate is a threshold matter [and w]e look to state law principles of contract formation to tell us whether an agreement to arbitrate has been reached. *Avedon Engineering, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997). Moreover, when determining the existence of such an agreement, there is no presumption of arbitrability. *See Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1988).

The parties agree[1] that California contract law applies. The parties' arguments center around two distinct areas of contractual interpretation—mutual assent and

---

[1] Defendants contend that New Mexico law governs the question of unconscionability. *See doc. 33* at 6-7; *see also doc. 40* at 2. As the Court does not rely on any unconscionability, this contention is moot.

supersession.  For the individuals who signed the Arbitration Agreement contemporaneously with at least one of the other documents described above, the question is whether there was mutual assent to arbitrate.  Under California law, mutual assent is necessary to the formation of a contract to arbitrate.  *Esparza v. Sand & Sea, Inc.*, 2 Cal. App. 5th 781, 788 (2016).  Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties.  *Id*. However, the mere existence of an ambiguity related to an arbitration agreement does not render that agreement unenforceable for lack of mutual assent.  *See 24 Hour Fitness, Inc. v. Superior Ct.*, 66 Cal. App. 4th 1199, 1214-15 (1998).  Instead, the Court should employ ordinary rules of interpretation to determine the parties' intent.  *See, e.g., Wilkins v. Weber Motors Fresno, Inc.*, 2005 WL 1941273, at *7 (Cal. Ct. App. Aug. 15, 2005) (unpublished).

"The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties."  *Bank of the West v. Superior Ct.*, 2 Cal. 4th 1254, 1264 (1992) (citing Cal. Civ. Code § 1636).  "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible."[2]  Cal. Civ. Code § 1639.  "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."  Cal.

---

[2] The qualifying language "if possible" is not relevant to the instant motion as neither party has indicated that any evidence outside the written contracts is relevant.

Civ. Code § 1641.  "Several contracts relating to the same matters, between the same

parties, and made as parts of substantially one transaction, are to be taken together."

Cal. Civ. Code § 1642.  "The interpretation of a contract 'must be fair and reasonable,

not leading to absurd conclusions.'" *Kashmiri v. Regents of Univ. of California*, 156 Cal.

App. 4th 809, 842 (2007) (citation omitted).  Finally, a "contract must receive such an

interpretation as will make it lawful, operative, definite, reasonable, and capable of

being carried into effect, if it can be done without violating the intention of the parties."

*Id*. (quoting Cal. Civ. Code § 1643).

    If the Court concludes that an agreement to arbitrate came into existence upon

the signing of the Arbitration Agreement, the next question under California law is

whether a later contract superseded it.  When there is an irreconcilable inconsistency

between two agreements between two parties, the later agreement supersedes the

earlier.  *See Frangipani v. Boecker*, 64 Cal. App. 4th 860, 863 (1998).  However, the mere

inclusion of an integration clause in the later agreement does not create an

irreconcilable inconsistency if the later document is silent on a particular matter and is

not otherwise inconsistent.  *See Jenks v. DLA Piper Rudnick Gray Cary US LLP*, 243 Cal.

App. 4th 1, 15-20 (2015) (analyzing several cases involving disputes over whether

earlier arbitration agreements were superseded by later contractual language).

## IV.    Analysis applied to Individual Defendants

### A.  Overview of Documents Relevant to each Individual Defendant

The current record lacks sufficient evidence of an Arbitration Agreement (or any other document incorporating an agreement to arbitrate) signed by Defendants Armijo, Pohl or Sepulveda.   Thus, the Court will deny without prejudice their motions to compel arbitration.  *See BOSC, Inc.*, 853 F.3d at 1177 (party moving to compel arbitration bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement); *see also Waltrip v. Pilot Travel Ctrs.*, 2022 WL 2192892, at *2 (D.N.M. 2022) (Wormuth, J.).

With respect to Defendant Singh, he signed the Arbitration Agreement, the Offer Letter, the Employment Contract and the Non-Disclosure Agreement.  *See doc. 41* at 3. All were signed within ten days of each other and as part of his employment by Plaintiff.  *Id*.  As such, the Court will take them together when determining whether he has an enforceable agreement to arbitrate.  *See* Cal. Civ. Code § 1642.

With respect to Defendant Mendoza, he signed the Arbitration Agreement, the Offer Letter and the Employment Contract.  *See doc. 41* at 3.  All were signed within fifteen days of each other and as part of his employment by Plaintiff.  *Id*.  As such, the Court will take them together when determining whether he has an enforceable agreement to arbitrate.  *See* Cal. Civ. Code § 1642.

With respect to Defendant Lough, she signed the Arbitration Agreement, the Offer Letter and the Non-Disclosure Agreement.  *See doc. 41* at 2-3.  All were signed within ten days of each other and as part of her employment by Plaintiff.  *Id*.  As such, the Court will take them together when determining whether she has an enforceable agreement to arbitrate.  *See* Cal. Civ. Code § 1642.

With respect to Defendant Garcia, she signed the Arbitration Agreement and the Offer Letter.  *See doc. 41* at 3-4.  Each was signed within a day of each other and as part of her employment by Plaintiff.  *Id*.  As such, the Court will take them together when determining whether she has an enforceable agreement to arbitrate.  *See* Cal. Civ. Code § 1642.

With respect to Defendant Brady, he signed the Arbitration Agreement, the Offer Letter and the Employment Contract.  *See doc. 41* at 3.  The Arbitration Agreement and the Offer Letter were signed the same day and as part of his employment by Plaintiff.  *Id*.  As such, the Court will take them together when determining whether an enforceable agreement to arbitrate was formed on that date.  *See* Cal. Civ. Code § 1642.  Defendant Brady signed the Employment Agreement almost five months later.  Thus, the Court will also analyze whether the Employment Agreement superseded any earlier agreement to arbitrate.

With respect to Defendants Montoya and LeDoux, they signed the Arbitration

Agreement and the Employment Contract.[3]  *See doc. 41* at 2.  Each of them signed the

Employment Agreement years after the Arbitration Agreement.  Thus, the Court will

analyze whether the Employment Agreement superseded the earlier agreement to

arbitrate.

### B.  Defendant Singh

As noted above, Defendant Singh and Plaintiff signed all four relevant

documents contemporaneously with the start of his employment by Plaintiff.  As such,

the language in those four documents will be taken together as one contract when

interpreting whether there is an agreement to arbitrate.  This Court applies the rules of

contractual interpretation laid out above.

The Arbitration Agreement is a four-page standalone document focused

exclusively on memorializing a broad agreement between Plaintiff and its signatory

employee to "arbitrate all disputes that are related in any way to [their] employment."

*Doc. 23-1* at 1.  It gives an extensive overview of arbitration, the claims which are

covered by the agreement and the short list of those not covered, the scope of the

arbitrator's power, the fact that it involves waiving a jury trial if a covered claim would

otherwise receive one, a severability clause in case a provision is deemed unenforceable,

---

[3] These Defendants also signed the Offer Letter.  However, each of them signed their Offer Letter more than a year before signing their Arbitration Agreement.  As such, in their cases, the Arbitration Agreement need not be read together with the Offer Letter, nor could the Offer Letter supersede the Arbitration Agreement.

and a substantial section on the process of arbitration under the agreement. *Id*. In short, it is a strong statement of the parties' intent to agree to arbitrate.

Regarding the Offer Letter, Employment Contract and the Non-Disclosure Agreement, Plaintiff points to several clauses which it contends undermines this apparent intent.[4] The Offer Letter contains two provisions relevant to resolving disputes. First, it states that the "resolution of any disputes … will be governed by California law…." *Doc. 31-2* at 2. Second, it states that "You and the Company submit to the exclusive personal jurisdiction of the federal and state courts located in [California] in connection with any Dispute or any claim related to any Dispute." *Id.* The Employment Agreement also designates California law as the governing law along with a clause entitled "Irreparable Harm and Injunctive Relief," which provides that:

> **in the event of any breach of any provision of this Article**, irreparable harm will be suffered by Company and that any remedy available at law will be inadequate and Company and Employee do, therefore, agree that in such event **Company shall be entitled to injunctive relief in any court of competent jurisdiction** against Employee and against any other person or entity involved in or connected with such breach […] which rights shall be in addition to such rights as Company may have for damages and in addition to such other remedies as the law or equity may provide.

---

[4] In its briefing, Plaintiff also points to the integration clause in the Offer Letter, Employment Contract and the Non-Disclosure Agreement. However, for the documents the Court is considering "together," these clauses are irrelevant. The import of the relevant integration clauses will be discussed when the Court analyzes the supersession argument.

*Doc. 31-3* at 2 (emphasis added).[5]  Notably, this clause applies only to Article IV of the

Employment Agreement, which governs the employee's duties related to trade secrets.

*Id*.  Finally, the Non-Disclosure Agreement states that California law governs and

provides:

> That the unauthorized use or disclosure of any Confidential Information by Employee shall cause irreparable harm to Company, an injury for which there is no adequate remedy at law, and that **Company may move for any and all appropriate equitable relief including preliminary and permanent injunctions in any court of competent jurisdiction to prevent unauthorized use or disclosure of Confidential Information.** Employee agrees that any such injunctive relief is in addition to all other available remedies, and does not preclude Company from seeking other available remedies.

*Docs. 31-6* at 2, *31-7* at 2 (emphasis added).

Reading all these provisions together with the Arbitration Agreement, the Court

must determine whether the parties intended and reached mutual assent that they were

required to arbitrate the claims presented in the instant case.  As noted above, the

"whole of a contract is to be taken together, so as to give effect to every part, if

reasonably practicable, each clause helping to interpret the other."  Cal. Civ. Code §

1641.  Further, a "contract must receive such an interpretation as will make it lawful,

operative, definite, reasonable, and capable of being carried into effect, if it can be done

---

[5] In its briefing, Plaintiff also points out that the Employment Agreement includes clauses stipulating that authorship of the Agreement favors neither party.  *Doc. 39* at 3 (citing *doc 31-3* at 4).  While the Court is somewhat skeptical that contractual language can prevent a court from following a codified rule of interpretation which would otherwise apply, the issue is not briefed and thus the Court will not utilize that rule.  *But see* Cal. Civ. Code § 1654.

without violating the intention of the parties." *Kashmiri*, 156 Cal. App. 4th at 842 (citing Cal. Civ. Code § 1643). Applying these tenets, the Court considers whether the clauses from the Offer Letter, Employment Agreement or Non-Disclosure Agreement are incompatible or inconsistent with the agreement to arbitrate contained within the comprehensive Arbitration Agreement.

First, the Court finds that choice of law provisions are in no way incompatible or inconsistent with this agreement to arbitrate. While not a court, virtually any arbitration forum will be called upon to apply facts to law. Choosing the state law that governs is entirely consistent with arbitration.

Second, the submission to the personal jurisdiction of California courts is not incompatible or entirely inconsistent with the agreement to arbitrate in the instant case. Similar clauses are commonly called "service of suit" clauses and simply waive one possible defense—personal jurisdiction—that may arise if litigation does arise. Even where the parties agree to arbitration, the parties may need to enforce an arbitration award through litigation which demonstrates that a "service of suit" clause is neither inconsistent nor surplusage here. *See, e.g.*, *Brener v. Becker Paribus Inc., A.G.*, 628 F. Supp. 442, 451-52 (E.D.N.Y. 1985) (citing *Hart v. Orion Ins. Co.*, 453 F.2d 1358, 1360 (10th Cir. 1971)). The Court recognizes that this particular "service of suit" clause is broad. *Doc. 31-2* at 2 ("in connection with any Dispute or any claim related to any Dispute"). Nonetheless, given the comprehensive nature of the Arbitration Agreement and the fact

that the "service of suit" clause can be interpreted consistently with that Agreement, the Court finds that it does not overcome the strong expression of an intent to arbitrate.

Third, the provision in the Employment Agreement regarding injunctive relief is not incompatible or entirely inconsistent with the Arbitration Agreement.  Indeed, it would permit Plaintiff to avoid arbitration and go to "any court of competent jurisdiction" if Plaintiff was suing an employee only for injunctive relief based exclusively on their alleged violation of obligations related to trade secrets.  However, putting aside the unconscionability concerns raised by the Individual Defendants, this clause, when read together with the Arbitration Agreement, can be reasonably interpreted as a very limited carve-out to the agreement to arbitrate.  As it can be interpreted consistently with the Arbitration Agreement, the Court finds that this clause does not overcome the parties' strong expression of an intent to arbitrate.

Finally, and for the same reasons, the clause in the Non-Disclosure Agreement related to equitable relief is not incompatible or entirely inconsistent with the Arbitration Agreement.  It would permit Plaintiff to avoid arbitration and go to "any court of competent jurisdiction" if Plaintiff was suing an employee only for equitable relief based exclusively on their alleged violation of obligations related to confidential information. *Docs. 31-6* at 2; *31-7* at 2.  As with the similar clause from the Employment Contract, this clause, when read together with the Arbitration Agreement, can be reasonably interpreted as a very limited (and virtually identical) carve-out to the

agreement to arbitrate.  As it can be interpreted consistently with the Arbitration Agreement, the Court finds that this clause does not overcome the parties' strong expression of an intent to arbitrate.

Therefore, reading all the documents signed by Defendant Singh together—the Arbitration Agreement, Offer Letter, Employment Agreement and Non-Disclosure Agreement—they express a mutual assent and a clear intent between Defendant Singh and Plaintiff to agree to arbitrate as laid out in the Arbitration Agreement.

### C.  Defendants Mendoza, Lough and Garcia

As catalogued above, this group of Defendants all signed the Arbitration Agreement and a subset of the other documents sufficiently contemporaneously that the Court will consider them together.  With respect to the respective documents signed by this group of Defendants, the same reasoning applicable to Defendant Singh's documents dictate the same result.  Therefore, as to Defendants Mendoza, Lough and Garcia, the Court finds an agreement between them and Plaintiff to arbitrate as laid out in the Arbitration Agreement.

### D.  Defendant Brady

As catalogued above, Defendant Brady signed the Arbitration Agreement and the Offer Letter sufficiently contemporaneously that the Court will consider them together to determine the existence of an agreement to arbitrate.  The same reasoning applicable to Defendant Singh's Arbitration Agreement and Offer Letter dictate the

same result.  Therefore, as to Defendant Brady, the Court finds that, as of December 2022, he and Plaintiff agreed to arbitrate as laid out in the Arbitration Agreement.

Subsequently, in April 2023, Defendant Brady and Plaintiff signed the Employment Agreement.  Consequently, the Court must determine whether that contract superseded the agreement to arbitrate contained in the Arbitration Agreement. Plaintiff's argument turns on three points.  First, the Employment Agreement, which was signed subsequent to the Arbitration Agreement does not include any agreement to arbitrate.  Second, the Employment Agreement includes an integration clause which states that it "sets forth all the promises, covenants, agreements and conditions between the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous agreements and understandings, inducements or conditions, expressed or implied, oral, written or otherwise, except as set forth herein."  *Doc. 31-3* at 4.  Third, the Employment Agreement, while it makes no mention of arbitration one way or another, does designate California law as governing and expressly permits Plaintiff to seek "injunctive relief in any court of competent jurisdiction against Employee and against any other person or entity involved in or connected with such breach […] which rights shall be in addition to such rights as Company may have for damages and in addition to such other remedies as the law or equity may provide." *Doc. 31-3* at 2.

Similar fact patterns have been addressed by courts applying California law as this Court must.  These cases are helpfully summarized in *Jenks*, 243 Cal. App. 4th at 15-20 (analyzing *Cione v. Foresters Equity Serv., Inc.*, 58 Cal. App. 4th 625 (1997), *Ramirez-Baker v. Beazer Homes, Inc.*, 636 F.Supp.2d 1008 (E.D. Cal. 2008), *Reynoso v. Bayside Mgmt. Co., LLC*, 2013 WL 6173765 ((N.D. Cal. Nov. 25, 2013), *Ryan v. BuckleySandler, LLP*, 69 F. Supp. 3d 140 (D.D.C. 2014), *Grey v. Am. Mgmt. Serv.*, 204 Cal. App. 4th 803 (2012)).  Having reviewed those cases and their application by the *Jenks* court, this Court concludes the following analysis is proper.  First, a court must look to the language of the integration clause.  If the integration clause contains the "limiting 'with respect to the subject matter of' language," it will not *sub silentio* supersede an earlier arbitration agreement.  Second, if it contains that limitation, a court must look for some language in the second contract expressly changing, limiting or rejecting the earlier arbitration agreement.  If such language is present, the latter provision controls.  If not, a court must consider whether the second contract contains provisions, typically related to remedies, which are not "reasonably susceptible" to an interpretation that the arbitration agreement survives.  *Reynoso*, 2013 WL 6173765, at *4.

Here, the integration clause of the Employment Agreement does contain the limiting language.  It does not reference arbitration in any fashion.  Consequently, the only remaining issue is whether the provision regarding the availability of injunctive relief to Plaintiff for an employee's alleged violation of Article IV is sufficiently

incompatible with the terms of the Arbitration Agreement.  For the same reasons

explained above, the Court holds that it is not.  Therefore, under California contract

law, Defendant Brady's Employment Agreement did not supersede the earlier

Arbitration Agreement.

### E.  Defendants Montoya and LeDoux

As catalogued above, Defendants Montoya and LeDoux first signed the

Arbitration Agreement, and then years later signed the Employment Contract.  *See doc.*

*41* at 2.  As such, the reasoning related to Defendant Brady dictates the same result—

their Employment Agreements did not supersede their earlier Arbitration Agreements.

### V.    Conclusion

Based on the foregoing, Defendants Singh, Mendoza, Lough, Brady, Montoya

and LeDoux have shown that they and Plaintiffs formed an agreement to arbitrate.  *See*

*Soc'y of Pro. Eng'g Emps. in Aerospace*, 681 F. App'x at 721.  Plaintiff has conceded that

the instant dispute falls within scope of that agreement's scope.  *See doc. 40* at 4.  Thus,

those Defendants have met their burden, and their motions will be granted.  The Court

notes that, when either party petitions the court to stay an action pending compulsory

arbitration, the mandatory language of 9 U.S.C. § 3 dictates a stay rather than dismissal.

*See Adair Bus Sales, Inc. v. Blue Bird Corp.*, 25 F.3d 953, 955 (10th Cir. 1994).  However,

whereas here, the movants seek dismissal and there is no evidence in the record of any

other party requesting a stay pending arbitration, dismissal is appropriate.  *See Armijo v. Prudential Ins. Co. of Am.*, 72 F.3d 793, 797 (10th Cir. 1995).

With respect to Defendants Sepulveda, Pohl and Armijo, their motions will be denied without prejudice.  If, through the exercise of reasonable diligence in the discovery process, those Defendants find Arbitration Agreements signed by them and Plaintiff, they may move to compel arbitration at that time.

In Defendants' Reply, they seek additional remedies—dismissal for improper venue if arbitration is not compelled and compelling certain discovery of contractual documents.  *See doc. 33* at 11-12.  As they were not raised in the Motion, the Court will not consider them.  *See Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011).

**WHEREFORE IT IS HEREBY ORDERED** that, as to Defendants Alam Singh, Nickolas Jason Mendoza, Heather Lynn Lough, Mark Louis Brady, Viviana Montoya and Justin LeDoux, the motion to dismiss (*doc. 23*) is **GRANTED** and the claims against them are **DISMISSED**.**IT IS FURTHER ORDERED** that, as to Defendants Stephen Sepulveda, Freddie Orlando Pohl and Sandra Armijo, the motion is **DENIED WITHOUT PREJUDICE**.

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**

20